[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 4, 2010
JOHN LEY
CLERK

No. 09-15227
Non-Argument Calendar
_____

Agency No. A088-338-112

NAIYUN JIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 4, 2010)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Naiyun Jiang seeks review of the Board of Immigration Appeals' ("BIA")

decision affirming the Immigration Judge's ("IJ") order finding him removable, dismissing his application for asylum, and denying his application for withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). On appeal, Jiang argues that substantial evidence does not support the BIA's: (1) adverse credibility finding, or (2) the denial of withholding of removal based on the likelihood that he will suffer forced sterilization upon return to Fujian Province in the People's Republic of China ("China"). Upon review of the record and the parties' briefs, we deny the petition.

## I. BACKGROUND

Jiang, a native and citizen of Fuzhou, in the Fujian Province China, arrived in the United States without inspection in 1998.

In 2008, more than one year after his arrival, Jiang filed an application for asylum, withholding of removal, and CAT relief, based on race and political opinion. First, Jiang alleged that, upon his return, he would suffer forced sterilization and fines under China's family planning policy because he has three children. The fact that his children were born in the United States would not make a difference. Two of his male friends from Fujian Province —Sun MinChun and Chen MaoDong— were forcibly sterilized in 2003 and 2006, respectively, for

2

violating the family planning policy. Jiang and his wife would like to have more children.

Second, Jiang alleged that he would suffer persecution upon returning to China based on his Christian religion. He was baptized in an underground Christian church in China in 1997, and practiced there until February 1998. According to Jiang, State officials often warned Jiang not to distribute religious leaflets. His parents arranged for him to leave China in order to have religious freedom. Jiang attended a Jehovah's Witness church in the United States.

In support of his application, the administrative record indicates that Jiang submitted a number of unauthenticated documents, including the following: (1) birth certificates for his three children, (2) Chinese identification documents showing that Jiang was from Fujian Province, (3) a letter from the wife of Sun MinChun. The letter from Sun MinChun's wife asserted that she went into hiding to avoid sterilization after giving birth to a second child in violation of the family planning policy, and that officials sterilized her husband in 2003 when they could not locate her and required them to pay a fine. This was submitted along with her: (a) identification documents, (b) a certificate of sterilization for her husband, and (c) a receipt for the fine. Jiang also submitted a letter from another woman from Fujian Province who asserted that officials sterilized her in 2006, immediately following the birth of her second child. This letter was submitted along with an

3

envelope for the letter with a Fuzhou postmark, and copies of her identification and sterilization documents.

The administrative record also indicates that Jiang submitted a copy of a Lianjiang County, Guantou Township, family planning policy directive that took effect on January 1, 2006. The directive provided that "all returning oversea[s] Chinese, who do not have citizenship[] of other countries, shall follow the laws and regulations regarding family planning of the state and Fujian Province." R. 581–88. Children born overseas would be included within the town's family planning goals without regard to their citizenship. Couples who gave birth out of plan would be fined. Women of reproductive age would be inserted with an intrauterine contraceptive device ("IUD"), or else, "[o]ne party of the couple [would] be sterilized if the nature of the violation [was] very serious." *Id*.

In addition, the administrative record contained the U.S. Department of State China Country Report on Human Rights Practices for China for 2007 ("Country Report"). R at 478–541. The report indicated that the Chinese state "continued its coercive birth limitation policy, in some cases resulting in forced abortion and sterilization." R at 478. Even so, "enforcement varied significantly from place to place," and the policy was "more strictly applied in cities." R at 486–87. Each province had its own enforcement regulations. R at 487. Fujian Province, along with nine others, required "unspecified 'remedial measures' to deal with

4

out-of-plan pregnancies." *Id*. Violators faced a variety of disciplinary measures and, "[i]n the case of families that already had two children, one parent was often pressured to undergo sterilization." *Id*.

According to the Country Profile, an October 2006 letter from the Fujian Province Population and Family Planning Commission stated that "children born abroad, if . . . not entered into the parents' household registration . . . [were] not considered as permanent residents of China, and therefore [were] not counted against the number of children allowed under China's family planning law." R at 181. "Therefore, there is no forcible . . . sterilization" of parents who have children born in the United States "if permanent residency is not established when the child returns to the Mainland." R at 212. However, children living as United States citizens were ineligible for the free education and social benefits available to Chinese citizens, and parents who listed these children as permanent residents could not exclude them from the family planning laws.

The Country Profile also noted that "[d]ocumentation from China, particularly from Fujian Province, [was] subject to widespread fabrication and fraud," including "documents that purportedly verify identities, personal histories, births and birth control measures, and notices from public security authorities." R at 182.

The Department of Homeland Security ("DHS") served Jiang with a notice

to appear ("NTA"), alleging that he had not been admitted or paroled into the United States after inspection by an Immigration Officer. The NTA charged him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182, for being present in the United States without permission.

During a credible-fear interview, Jiang reiterated his fear of persecution based on China's family planning policy and his Christian religion. He conceded that the government could order him to pay a fine instead of undergoing sterilization, but he believed that only wealthy individuals could afford to pay. On one occasion, the Chinese police chased him for distributing religious leaflets, but he never was arrested or harmed based on his religion.

During a hearing before the IJ, Jiang reiterated that he feared persecution based on China's family planning policy. Jiang admitted the factual allegations contained in the NTA, conceded removability, and renewed his asylum claims. His counsel stated that he did not have any originals of the documents pertaining to the sterilization of Jiang's friends. Jiang testified that his mother was forced to undergo sterilization after giving birth to three children, around twenty-six years ago. His uncle's wife was sterilized after the birth of her third child, around twenty-four years ago, but he did not know her name. R at 104–05. Another uncle's wife was sterilized after the birth of her third child, but he did not remember her name. R at 105.

6

Jiang also reiterated his religious persecution claim. He distributed flyers about Jesus Christ without incident in September 1997. On cross-examination, Jiang testified that he did not apply for asylum after the birth of his second child because he thought he could live in the United States illegally. He had no proof that his mother was sterilized. When asked why he did not previously mention the two incidents where the police came to his underground church, Jiang claimed that he did, in fact, mention them.

The IJ denied Jiang's application. As an initial matter, the IJ decided that Jiang's asylum claim was time-barred. Next, the IJ found that Jiang was not credible. Additionally, the IJ concluded that Jiang was not entitled to withholding of removal or CAT relief. In particular, the IJ concluded that Jiang failed to establish past persecution or a likelihood of future persecution based on his religion. Further, the IJ found that he did not show a clear probability of forcible sterilization because the state did not require the sterilization of parents of children born abroad.

Jiang administratively appealed the IJ's decision to the BIA arguing that the IJ made an improper adverse credibility finding because his testimony was detailed, credible, consistent, and supported by background material. He also alleged that the IJ did not properly consider the evidence he submitted and that he demonstrated his entitlement to withholding of removal based on a likelihood of

7

forced sterilization. He did not challenge the denial of CAT relief and only mentioned his religion claim in passing. The BIA denied Jiang's application. This timely appeal followed.

## II. STANDARD OF REVIEW

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (per curiam). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.* Here, because the BIA issued its own decision in the present case, we will only review the BIA's decision.

We review the BIA's legal conclusions de novo, with appropriate deference to the BIA's reasonable interpretation of the INA. *See Mohammed v. Ashcroft*, 261 F.3d 1244, 1247–1248 (11th Cir. 2001). We review the BIA's factual determinations under the substantial evidence test. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). As with other factual findings, "[c]redibility determinations likewise are reviewed under the substantial evidence test." *D-Muhumed v. United States Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004); *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006) (per curiam). "The trier of fact must determine credibility, and this [C]ourt may not substitute its judgment for that of the BIA with respect to credibility findings." *Muhumed*, 388 F.3d. at

818 (citation omitted).

Under the highly deferential substantial evidence test, we will "affirm the BIA's decision if it is supported by reasonable, substantial and probative evidence on the record as a whole." *Al Najjar*, 388 F.3d at 1284. (citation and quotation omitted). To reverse fact findings, "we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (citation omitted). This Court reviews "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

### III. DISCUSSION

### A. Credibility Determination

To be considered an adverse credibility determination, the BIA must state explicitly that the applicant's testimony was not credible, and "must offer specific, cogent reasons." *Forgue*, 401 F.3d at 1287. "The burden then shifts to the alien to show that the [BIA's] credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence," in light of the totality of the circumstances. *Chen*, 463 F.3d at 1231 (citation and quotation omitted); 8 U.S.C. § 1158(b)(1)(B)(iii), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302.

"Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam) (citation omitted). Moreover, "considering the totality of the circumstances the trier of fact may base a credibility determination on . . . any inaccuracies or falsehoods in [the applicant's] statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim or any other relevant factor.*" *Chen*, 463 F.3d at 1233 (alterations in original) (citation and internal quotations omitted); *see also Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) ("The weaker an applicant's testimony . . . the greater the need for corroborative evidence.").

Jiang argues that the BIA's credibility determination was not supported by substantial evidence. We find this argument unpersuasive. The record indicates that the BIA provided specific, cogent reasons for doubting Jiang's veracity in making his adverse credibility determination. First, the BIA pointed out the inconsistencies in Jiang's testimony. Jiang testified that his mother and aunts suffered forced sterilization by two police raids on his underground church. However, Jiang failed to mention these incidents in his asylum application or

during his credible fear interview.[1] Thus, we find no error in the BIA's conclusion that Jiang's testimony was embellished.

Second, Jiang could not remember his aunts' names when asked by the IJ which supports the BIA's conclusion. Although remembering their names is irrelevant to the dispositive issue, and is not necessarily at heart of the Jiang's claim, the BIA was entitled to treat this as a negative reflection on his overall credibility. *See Chen*, 463 F.3d at 1233. Subsequently, the burden shifted to Jiang to show that the credibility finding was not supported by specific, cogent reasons or was not based on substantial evidence. Jiang has failed to meet this burden. Therefore, we find no error in the BIA's credibility determination.

## B. Withholding of Removal

An alien seeking withholding of removal under the INA must show that his "life or freedom would be threatened in [his home] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); *Mendoza*, 327 F.3d at 1287. "The alien bears the burden of demonstrating that it is more likely than not [he] will be persecuted or tortured upon being returned to [his] country." *Sepulveda v. U.S. Att'y Gen.*, 401

---

[1] *See Ruiz*, 440 F.3d at 1255; *see also Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1051 (11th Cir. 2009) (per curiam) (upholding a credibility determination due to the petitioner's inconsistent testimony and omissions of fact during his airport interview, credible-fear interview, and hearing testimony).

F.3d 1226, 1232 (11th Cir. 2005) (per curiam) (citation and quotation omitted).

While the INA does not define persecution, we have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Id.* at 1231 (citation and quotation omitted). Forced abortions and sterilizations constitute persecution on account of political opinion. 8 U.S.C. § 1101(a)(42)(B).

Substantial evidence supports the BIA'S finding that Jiang failed to qualify for withholding of removal. The record shows that the BIA considered the evidence that Jiang and the government submitted. Jiang's corroborating documents were unauthenticated, and background reports noted a high degree of fraud in this regard. Further, Jiang cited no specific examples involving the sterilization of Chinese citizens with children who were United States citizens, and a recent background article indicated that Fujian Province did not count such children for family planning purposes. Thus, Jiang has failed to satisfy his burden of proof.

## C. All Other Claims

Jiang does not challenge the dismissal of his asylum claim as untimely, the rejection of his religious-persecution claim, or the BIA's denial of relief under CAT based on his family planning claim. Accordingly, he has waived any arguments in this respect. *See Sepulveda,* 401 F.3d at 1228 n.2 (noting that issues

not briefed on appeal are deemed abandoned).  In addition, while Jiang also argues for the first time that the IJ failed to consider all the evidence he submitted, he failed to exhaust this claim before the BIA and we lack jurisdiction to consider it. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam) (holding that we "lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto").

## IV. CONCLUSION

Accordingly, we deny Jiang's petition for review challenging the BIA's credibility determination and denial of withholding of removal.  Because Jiang failed to exhaust his claim before the BIA, we dismiss his claim that the IJ failed to consider all the evidence about China's population control policy.

**PETITION DENIED IN PART, DISMISSED IN PART**.